**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MICHELE PENRY,

       Plaintiff - Appellant,

    v.

FEDERAL HOME LOAN BANK OF
TOPEKA, and its representatives;
CHARLES R. WAGGONER, in his
capacity as defendants' representative
and in his individual capacity,

       Defendants - Appellees.

No. 97-3203

-----------------------------------------------

DEBRA ANN GILLUM

       Plaintiff - Appellant,

    v.

FEDERAL HOME LOAN BANK OF
TOPEKA, and its representatives;
CHARLES R. WAGGONER, in his
capacity as defendants' representative
and in his individual capacity,

       Defendants - Appellees.

No. 97-3204

--------------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       Amicus Curiae.

---

Michael B. Myers (Cheryl D. Myers, with him on the briefs), Myers & Myers, Topeka, Kansas, appearing for Plaintiffs-Appellants.

Patricia E. Riley (Denise M. Howard, with her on the briefs), Weathers & Riley, Topeka, Kansas, appearing for Defendants-Appellees.

Barbara L. Sloan, Attorney (C. Gregory Stewart, General Counsel, J. Ray Terry, Jr., Deputy General Counsel, Vincent J. Blackwood, Acting Associate General Counsel, and Carolyn L. Wheeler, Assistant General Counsel, with her on the brief), Equal Employment Opportunity Commission, Washington, DC, appearing for amicus curiae Equal Employment Opportunity Commission.

Before **PORFILIO**, **McKAY**, and **TACHA**, Circuit Judges.

**TACHA**, Circuit Judge.

Plaintiffs Michele Penry and Debra Ann Gillum sued their employer, Federal Home Loan Bank of Topeka (FHLB), for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and for intentional infliction of emotional distress under Kansas state law. Gillum, who resigned prior to suing the bank, also claimed constructive discharge. The district court granted the defendants' motions for summary judgment on all claims. Penry and Gillum appeal the grants of summary judgment, and we exercise jurisdiction over their consolidated appeals under 28 U.S.C. § 1291. We affirm the entry of

- 2 -

summary judgment on all claims.

## BACKGROUND

Both Penry and Gillum base their complaints of sexual harassment on the actions of Charles Waggoner, another FHLB employee and, for most of the relevant time period, their supervisor at the bank. Both of the plaintiffs began working at FHLB in 1989 and held the position of collateral review assistant at all relevant times. In 1989, FHLB hired Waggoner as the collateral review manager. The duties of the collateral assistants included accompanying Waggoner on out-of-town trips to borrowing financial institutions to conduct on-site inspections of collateral. Prior to November 1992, Waggoner was not the plaintiffs' immediate supervisor at FHLB, but he did have supervisory authority over the collateral assistants during the out-of-town inspection trips. In November 1992, he became their direct supervisor.

Both plaintiffs describe a variety of inappropriate comments and behavior by Waggoner between 1990 and 1993. Gillum asserts that several times when she and Waggoner traveled together for FHLB business, he intentionally gave hotel clerks the impression that he and Gillum were to share a room, leaving it to Gillum to correct the situation. While Penry was on business travel with Waggoner in March 1990, he asked her if women have wet dreams. While Waggoner and Gillum were on a business trip together in April 1990, Waggoner

took Gillum to dine at Hooters, a restaurant whose marketing theme is based on its well-endowed female waiting staff. Gillum was unaware of this feature of the restaurant until after they arrived. Later, Penry and Gillum learned from another woman in their department that Waggoner had also chosen that restaurant while on business travel with her. On another trip, Waggoner insisted that Gillum work in his hotel room despite her protests and request to work in her own room.

During a business trip in October of 1990, Waggoner told Penry that her bra strap was showing but then said, according to Penry, that he kind of liked it that way. In March of 1991, Gillum overheard Waggoner make a double entendre to another male employee that one of the female assistants "allowed him to get in her drawers anytime." In November 1992, Waggoner asked Penry what she was wearing under her dress and laughed when she said she did not appreciate the comment. On separate occasions in 1990 and 1991, Waggoner pointed out to each of the plaintiffs that the roof of a particular mall was shaped like a woman's breasts. Penry alleges that in the fall of 1992, Waggoner began following her constantly when she got up to go to the breakroom or the bathroom. Gillum alleges that between spring of 1991 and spring 1992, Waggoner would often (at least twice a week) stand and stare at her while she was working. In December 1992, Waggoner called one of the other female review assistants over to where he and Penry and Gillum were gathered by demanding, "bring your buns over here."

Gillum alleges that on one day in 1993, Waggoner leaned against her and repeatedly tried to look down her blouse. Waggoner repeatedly referred to the collateral assistants as "gals" rather than by name when introducing them to employees at other banks on travel, despite their requests that he stop doing so. Both plaintiffs allege that Waggoner needlessly touched them on many occasions throughout the years they worked with him. Each complains that he would often sneak up from behind and grab her shoulders while loudly saying her name to startle her.

Penry and Gillum each informed Waggoner on several occasions that they did not like his behavior and asked him to stop. Both plaintiffs also complained to their supervisors about Waggoner's conduct, including Sonia Betsworth and human resources manager Michael Cnossen.

After another woman working under Waggoner resigned in February 1993, Gillum overheard him say, "One down, two to go," which she understood to mean Waggoner was trying to get rid of her and Penry. Gillum finally resigned in June 1993. Penry remained at the bank, but began working at a different department in March 1994. FHLB terminated Waggoner in November 1994.

## DISCUSSION

We review a grant of summary judgment de novo, applying the same legal standard used by the district court. See Wolf v. Prudential Ins. Co. of Am., 50

F.3d 793, 796 (10th Cir. 1995) (further citations omitted).  The entry of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party is entitled to summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When applying this standard, the court must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party.  See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir.1996).

I.      Title VII Sexual Harassment Claim

Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment on account of her sex.  See 42 U.S.C. § 2000e-2(a)(1).  The plaintiffs base their Title VII sexual harassment claims on a hostile work environment theory.

For a hostile environment claim to survive a summary judgment motion, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

- 6 -

pervasive to alter the conditions of the victim's employment and create an abusive working environment." Davis v. U.S. Postal Service, 142 F.3d 1334, 1341 (10th Cir. 1998) (internal quotation marks and citations omitted). The plaintiff must produce evidence that she was the object of harassment because of her gender. Conduct that is overtly sexual may be presumed to be because of the victim's gender; however, actionable conduct is not limited to behavior motivated by sexual desire. See Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998, 1002 (1998); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987). While the plaintiff must make a showing that the environment was both objectively and subjectively hostile, she need not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment. See Davis, 142 F.3d at 1341.

The district court found that of all the allegations made by the plaintiffs, only a few were due to gender. In Gillum's case, the court concluded that Waggoner had made one gender-based comment (regarding getting into an assistant's "drawers") and engaged in four specific acts of unwanted physical contact, all of which were because of her gender, in addition to other touching that occurred periodically. See Gillum v. Federal Home Loan Bank, 970 F. Supp. 843, 852 (D. Kan. 1997). In Penry's case, the court found only that Waggoner had made four gender-based comments (the comments on wet dreams, Penry's

exposed bra strap, the "drawers" comment, and asking Penry what she was wearing under her dress), and that none of his conduct toward Penry constituted sexually offensive touching. See Penry v. Federal Home Loan Bank, 970 F. Supp. 833, 840 (D. Kan. 1997). In each case, having narrowed down the relevant acts to a few incidents, the court found that the conduct was not severe or pervasive enough to create an environment that a reasonable juror could find hostile and abusive. Gillum, 970 F. Supp. at 852; Penry, 970 F. Supp. at 840.

We agree with the district court on the number of gender-based incidents that occurred in these cases, and we do not find that other gender-based incidents occurred. We do disagree slightly, however, with the district court's analysis of the evidence, though not with its ultimate conclusion. The court determined that most of the incidents alleged did not occur because of the plaintiffs' gender and were therefore irrelevant to their claims. In reviewing the record, the district court mechanically proceeded through the evidence, determining that certain of Waggoner's conduct was gender-based (and therefore relevant to the plaintiffs' claims), while determining that the other conduct was not gender-based (and was therefore irrelevant to the plaintiffs' claims). Our precedents, however, eschew such a mechanical approach to analyzing hostile work environment claims. In Meritor Savings Bank v. Vinson, the Supreme Court stated that the existence of sexual harassment must be determined "in light of the record as a whole," and the

trier of fact must examine the totality of the circumstances, including "the context in which the alleged incidents occurred." Meritor, 477 U.S. 57, 69 (1986) (quoting EEOC guidelines, 29 C.F.R. § 1604.11(b) (1985)) (internal quotation marks omitted). With this in mind, our hostile environment cases consistently have emphasized the need for the district court to examine the totality of the circumstances when reviewing a summary judgment motion. See, e.g., Davis, 142 F.3d at 1341; Smith v. Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997). Indeed, the very term "environment" indicates that allegedly discriminatory incidents should not be examined in isolation. "[O]ne of the critical inquiries in a hostile environment claim must be the *environment*. Evidence of a general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." Hicks, 833 F.2d at 1415. The Third Circuit has aptly described the need to examine the totality of the circumstances in hostile environment cases:

> A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario. As the Court of Appeals for the Eleventh Circuit noted, the factfinder in this type of case should not "necessarily examine each alleged incident of harassment in a vacuum. What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents."

Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3rd Cir. 1990) (quoting

Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510 (11th Cir. 1989)).

In light of the record as a whole, we find that at least two of the incidents that the district court found not to be gender-based are nevertheless relevant to the plaintiffs' claims of a hostile work environment. First, Waggoner made comments to both Gillum and Penry about the mall roof looking like a woman's breasts. The district court said of these comments:

> [T]he court is not convinced that Waggoner would not have made these remarks but for [plaintiff's] gender. To the contrary, it seems likely . . . that he would have made the same remark to any associate . . . . Again, while such conduct in a business environment might demonstrate a certain degree of baseness, it does not demonstrate sexual animus or gender bias, and [plaintiff] presents no evidence to the contrary.

Gillum, 970 F. Supp. at 850, Penry, 970 F. Supp. at 839-40. Second, the district court observed that Waggoner had taken Gillum to Hooters while on business travel, and similar to its treatment of the mall roof comments, the district court discounted the Hooters incident as relevant.

The defendants assert that we should not consider either of these pieces of evidence since Waggoner may have been as likely to engage in such conduct in the presence of men, and therefore his conduct was not because of sex. While this may be true, we do not think that the evidence is irrelevant and beyond consideration. See Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1320, 1327 (8th Cir. 1994) (finding that evidence relating to a performance by a

female stripper at a sales meeting, a videotape showing female sales representatives baring their breasts to their male colleagues, and parties held after sales canvasses to which men brought dates referred to as "road whores" in place of their wives, was relevant to plaintiff's hostile environment claim). It is true that Waggoner might have been just as likely to take a male assistant to Hooters, or that he may have been equally inclined to comment about the shape of the mall roof to a male colleague. In that sense, those incidents were not "because of the plaintiff's gender" and could not be the basis for liability. Nonetheless, these acts have gender-related implications; we cannot, with straight faces, say that Waggoner's trips to Hooters had nothing to do with gender. Indeed, the restaurant's name aims to attract business with a double entendre implicating the female anatomy. Cf. Ray v. Tandem Computers, Inc., 63 F.3d 429 (5th Cir. 1995) (noting that evidence of a lunch meeting at Hooters, "a restaurant/bar known more for the attire of its service personnel than its cuisine," id. at 432, "may be relevant to a supervisor's motives in employment actions," id. at 434). Nor can we say that Waggoner's mall roof comments had nothing to do with gender. Even where the motive behind the alleged conduct was not the plaintiff's gender, the court may still consider that conduct relevant when evaluating whether ambiguous conduct was in fact gender-motivated or whether gender-motivated conduct was so severe and pervasive as to create Title VII liability.

Accordingly, we turn to the evidence. As noted above, we agree with the district court's assessment of which incidents were gender-motivated and which incidents were not. Even after examining that evidence in light of the Hooters incident and mall roof comments, however, we are still unable to conclude that a rational jury could find that plaintiffs' workplace was permeated with discriminatory intimidation. We have no doubt that the plaintiffs worked in an unpleasant environment. Nevertheless, the gender-based incidents were too few and far between to be considered "sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive working environment." Id. (citations and internal quotation marks omitted). The gender-based incidents were spread out over a period of more than three years and are insufficient to establish a discriminatorily hostile environment. Cf. Hicks, 833 F.2d at 1412 (stating that plaintiffs must prove more than a few isolated incidents of racial enmity in hostile work environment case).

The vast majority of Waggoner's behavior set forth in the plaintiffs' 200-paragraph statement of facts seems motivated by poor taste and a lack of professionalism rather than by the plaintiffs' gender. What made the plaintiffs' environment hostile, if anything, was not the gender-based incidents but instead the gender-neutral antics perpetrated by Waggoner throughout his four-year career at FHLB. "If the nature of an employee's environment, however unpleasant, is

not due to her gender, she has not been the victim of sex discrimination as a result of that environment." Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994). We affirm the grant of summary judgment for the defendants on the plaintiffs' hostile environment claims.

II.     Retaliation Claims

Penry and Gillum next contend that the defendants retaliated against them when they complained to Waggoner and to their supervisors about Waggoner's harassment. Title VII prohibits an employer from discriminating against an employee in retaliation for opposing unlawful employment practices. See 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, the plaintiff must show that "(1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action." Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1381 (10th Cir. 1994).

After a thorough review of the record, we agree with the district court that the plaintiffs have not provided sufficient evidence to establish a prima facie case of retaliation. The record fails to demonstrate that either of the plaintiffs suffered adverse employment action in connection with their complaints regarding

Waggoner or their lawsuits. There are no genuine issues of material fact on this issue. Thus, we affirm the grant of summary judgment for the defendants on the Title VII retaliation claims.

III.    Emotional Distress Claims

Both Penry and Gillum assert claims of intentional infliction of emotional distress against the defendants. Under Kansas law, liability for emotional distress has two threshold requirements. To resolve a motion for summary judgment on an emotional distress claim, the court must determine:

> (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

Lindemuth v. Goodyear Tire & Rubber Co., 864 P.2d 744, 749 (Kan. 1993) (quoting Roberts v. Saylor, 637 P.2d 1175, 1179 (Kan. 1981)). Conduct is not extreme and outrageous unless it is regarded as being "beyond the bounds of decency and utterly intolerable in a civilized society." Moore v. State Bank, 729 P.2d 1205, 1211 (Kan. 1986). We agree with the district court that the plaintiffs have failed to demonstrate that either Waggoner's or FHLB's conduct may reasonably be regarded as extreme and outrageous as required by Kansas law. We affirm the district court's entry of summary judgment for the defendants on the emotional distress claims.

IV. Gillum's Constructive Discharge Claim

In addition to the claims discussed above, Gillum (who resigned from FHLB in 1993) claimed that she was constructively discharged. To support a Title VII claim of constructive discharge, the plaintiff "must produce evidence that the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Thomas v. Denny's, Inc., 111 F.3d 1506, 1514 (10th Cir.) (citations and internal quotation marks omitted), cert. denied, 118 S. Ct. 626 (1997). Even viewing Gillum's allegations in the light most favorable to her, we find that she has not met this threshold, and we affirm the district court's grant of summary judgment for the defendants on this claim.

## CONCLUSION

For the reasons set forth above, we AFFIRM the entry of summary judgment for the defendants on the plaintiffs' Title VII hostile environment and retaliation claims, their state law claims of emotional distress, and Gillum's claim of constructive discharge.

Defendants' motion to supplement the record on appeal is denied.